please be seated. Thank you. Good morning. Welcome to the Ninth Circuit Court of Appeals. My name is Morgan Kristen. I'm one of the circuit judges. We're all three circuit judges this week sitting together, which is great. I'm delighted to be joined on my my right your left by Judge Carlos Bayer. His chambers are here in San Francisco and also Judge Anthony Johnstone, whose chambers are in Missoula Missoula. Although I think they keep moving. We're in the right place. Okay, good. Uh, so that's great. I'm gonna do just a little bit of housekeeping before we begin because we're submitting three cases. The first is 21-958 Singh versus Garland. That will be submitted on the briefs. We won't hear argument in that case today. The same is true for 22-401 Enriquez Luna versus Garland and 22-844 Lopez Lopez versus Garland. The first case on the oral argument calendar is 22-577 Singh versus Garland. And I think we have one lawyer participating by zoom and one present here in person. So let me just do a honor. Okay, you should be Mr Bradford. Is that right? Mr. Joe Robert Bradford Job. Yes, your honor. Oh, forgive me, Bradford Job. Forgive me. All right. But you can hear us. Okay. Yep. Perfectly. All right. Eso we are. If you give me one minute, I'll stop wrestling papers and then we'll be ready to hear your argument. Okay. Okay, Council, I'm ready to go. May it please the court. I'm Robert Job and I'm appearing today on behalf of the petitioner, Ranjit Singh. The board's decision in this case is what we might call a Burbano plus. That is the board adopted and affirmed the immigration judge's decision pursuant to matter of Burbano. But in addition, it added at least three of its own comments. And it's those three comments that I think are going to be the focus of today's argument. Normally, when the board issues a Burbano affirmance, that means that the issues will be deemed exhausted. Here, however, the board made these three additional comments, and I think it's those three comments that are dispositive of the issues that are presented here in the briefing. The first comment is that at the bottom of page two of the board's decision. On appeal, the petitioner argued that the immigration judge should have applied a nationwide presumption that he could not reasonably relocate, citing to this court's decision in Singh versus Whitaker. In response, the board argued that in Singh versus Whitaker, the petitioner there had made a claim that the petitioner had been persecuted by the police, whereas in the instant case, Mr. Singh had been persecuted by private individuals. Council, I'm going to interrupt you because we're really familiar with the record, and your time is ticking away here. You don't have a lot of it. So the first issue I think is that you're calling our attention to is the change in regulation and the board's failure to recognize that. Well, yeah, obviously, this case is controlled by the regulations from 2018 for asylum in 2020 for the withholding of removal claim. It's not clear that the board failed to recognize that, but clearly it made a misstatement of law when it said the presumption of nationwide persecution does not apply when the persecution was at the hands of private individuals. It's not citing any new regulation, the regulations that were enjoined, the 2020 global asylum regulations. Mr. Jobe, do you view the nationwide presumption as a function of our decision in Whitaker or of the regulation? Are they the same or different looking here at B3, Romanet 2? It's a function of the regulations, Your Honor, and there are multiple components of those presumptions. And here in this passage, the board is conflating at least two elements, right? On the one hand, the argument that was being made was that the immigration judge should have applied the nationwide presumption that he could not reasonably relocate. In response, the board talked about whether he could avoid persecution by relocating to another part of the state. On both points, the board was wrong. First, the presumption that arises upon a showing of past persecution, that is the presumption that a victim of past persecution must be presumed to have a well-founded fear. Clearly, the presumption there is a well-founded fear of countrywide persecution. And the Section 8.13B2, which defines what is a well-founded fear, what is and what is not a well-founded fear, it says that a well-founded fear has three components. The applicant has to fear persecution in his or her country. Mr. Jobe, just to keep moving through this, why do you contend that the sister's safe living in another part of Punjab does not carry the government's burden? Well, I don't think I don't think we even get to that point. Because first, the threshold question is, did the board apply the presumptions? And here it appears that they applied neither. First, they specifically said that the persecution does not apply when the persecution is at the hands of private individuals. That suggests to me they didn't apply the presumption at all. Well, if we can't tell, if we can't tell, I take your point that there's a certainly raises questions because they've made this affirmative statement of law. But I think Judge Johnson's getting to a different point. If they misstate, you called this verbena plus, I think which is helpful. If the BIA has misstated the law, but we think that the underlying evidence would have supported the correct finding, what's the right outcome? Obviously, this court is not a fact finding body. The threshold question So does that mean that the answer to my question is that we would send it back pursuant to Ventura? Or it would be helpful if you if you could articulate your answer to my question. You would absolutely have to remand. Okay, so when you started, you don't have much time left. And when you started, you said that there were three different comments that you wanted to make. Well, the other two relate to the cat claim. And with respect to the cat claim. The issue is an exhaustion. It's really a waiver claim. And we haven't challenged the denial of cat before this court. That's not part of our argument. So yeah, we agree with the government there that that's, that's not before the court. But the other issue is that relating to whether there was persecution on account of political opinion or religion. And here again, the board's decision is internally inconsistent. On the one hand, it's saying, this is a Burbano affirmance, meaning we're adopting the immigration judges findings and conclusions. Mr. Joe, could you could you just go to whether or not why your client exhausted the political opinion and claim to the extent it was his own as opposed to the social group derivative of his father's political activity? The, the immigration judge ruled on that claim, Your Honor, specifically ruled on that. And the board then affirmed pursuant to matter of Burbano. And Ninth Circuit law on this, and there's a long line of cases, says that when the board affirms pursuant to matter of Burbano, and adopts the IJ's reasoning, it's the judge's findings and conclusion. Right. But Mr. Jobe, in terms of exhaustion, note two of the BIA opinion notes that your client did not challenge that conclusion on appeal. Exactly. And that's my point, is that that's flatly inconsistent with another part of the board's decision, the Burbano affirmance. So you Okay, so your point is that by by citing Burbano, you think that was the cat claim, and hence, we should deem it exhausted? Is that your No, I'm here, I'm focused on the persecution on account of political opinion. And see, Your Honor, I think it would be different if the board said that, you know, pursuant to Burbano, we affirm and adopt, except in so far as, you know, this issue relating to persecution on account of that wasn't raised. So we're not going to issue any kind of Burbano affirmance for that we're going to carve out an exception. So let me get back, because I share Judge Johnstone's question on this separate persecution claim, the PSG based upon political persecution, the board thought was not exhausted. And your position, as I understand it, is that we should deem it exhausted, because the board cited Burbano? No, my position is that you have to send this back for clarification, because the board made two inconsistent statements here. On the one hand, by citing Burbano, it would, that suggests plainly that they considered the issue and adopted the immigration judge's findings. Then without referring to that earlier statement, they go on and say that issue's waived. Well, it's either one or the other. It can't be both. Okay, so that sounds like the answer to my question should have been yes, you are relying on Burbano to decide that was exhausted. What am I missing? No, I'm saying the board's decision is inconsistent on its face. We can't tell. I understand. If anybody's guess what the board was thinking here, because they didn't explain why they were making these two inconsistent statements. Okay, hang on, hang on one minute. We're just about out of time. I want to make sure that my colleagues don't have additional questions. Mr. Jobe, I was wondering whether you have any argument on the question of presumption on reasonableness. We've talked about the safety piece. Do you contend that the board didn't properly allocate the burden or the presumption on both prongs of the test? Yeah, both the IJ and the board completely ignored the controlling regulation, 1208.13b3, that specifically says that where an applicant has presumed that internal relocation would not be reasonable unless the service establishes otherwise. It's a nationwide presumption. Excuse me, Judge Baird, do you have questions? Mr. Jobe, I was following your claim of political persecution. I thought this particular social group that your client was claiming was familial grouping. So, so what does political opinion have to do with it? Well, both grounds were argued in front of the immigration judge. The board, however, only considered the familial PSG. And that's what we have from appeal, right? Well, there's an issue there because on the one hand, the board, again, affirmed pursuant to Bourbon, which would suggest that it's adopting the immigration judge's findings with regard to political opinion, and that that issue was exhausted. But then it drops this footnote without, without acknowledging that it's a Bourbon affirmance. The two things are inconsistent. And therefore, I think the court has to remand so that the board can clarify exactly what it was to exhaustion. Let me ask you one more question. On cross-examination, your client stated that his sister was living in another part of the Punjab peacefully and had not been accosted by the bad persons in this case. Why is that not sufficient evidence that he could live in the same area peacefully? Well, we don't get to that issue, Your Honor, about whether that's sufficient to rebut the presumption until we're satisfied that the board applied the presumption. And here, the board specifically said that there is no presumption applicable here of a countrywide threat of persecution. If this evidence were sufficient to overcome a presumption, the error in not conceiving as a presumption would be harmless, would it not? Now, again, the, before this judge can, before this court can examine whether the government met its burden, we first have to be satisfied that, in fact, the immigration judge and the board applied the presumption. I see. I get your point. If I could just, the fact the sister is living without being harmed, that by itself tells us nothing. We don't know. Doesn't it tell you, doesn't it tell you that the sister who is the daughter of the father who the alien claims familial PSG status from is living peacefully and is not being bothered by the bad persons and that therefore it would apply to her brother? But, Your Honor, it doesn't tell us whether the persecutors even know of her existence. Counsel, you're way over time, so I'm going to stop there. When you come back, we'll give you two minutes for rebuttal. We've taken you over time. We'll hear from opposing counsel, please. Good morning, Your Honors. May it please the court. Michael Heisman, behalf of the Attorney General of the United States. There's only one issue properly before this court, and that's whether or not the government satisfied its burden of proving that petitioner can safely relocate within India. Um, I'd like to address this Burbano plus argument. This is again completely unexhausted and at a minimum waived by not being raised in petitioner's opening brief. I've fortunately been doing this for a very long time, so I'm very familiar with Burbano, but I'm not prepared here to discuss all of this nuanced argument regarding Burbano. I think I think all Burbano boiled down to in the end was the answer to Judge Johnstone's question about for the separate separate PSG based on political persecution. I think that's the basis that opposing counsel's relying upon for his contention that that issue is exhausted. Petitioner's trying to get a at a minimum third bite at the apple here. Petitioner had the opportunity before the board to argue about political opinion and religion based claims and didn't. The board doesn't need to has always functioned in terms of kind of administrative efficiency. It originally was set up so that the board could just say we cite matter of Burbano. We agree with everything, and that's it. And yes, Burbano plus exists. There's plenty of opinions where from the board where they go on to discuss specific things that are raised. It's almost unnecessary when the board does that to cite Burbano and doesn't have this massive effect of somehow curing the failure to raise arguments before the agency because the agency and that's the whole point of what we do here is that the agency has to have the opportunity to pass on issues in the first instance, especially when they deal with issues like past persecution, future persecution, its own regulations. Hence our problem because, as you said, we're focusing on relocation in this case, right? And that that is the issue that's well preserved. And so, uh, you know, there are many cases where we see someone making, you know, similar type of claim and we say relocation is viable and the government's met its burden because there are other family members living exactly, you know, close by. So we have, it seems to me, a misstatement of the law here by the B. I. A. And when we have a misstatement of the law, we typically send cases back to take another run at it. Um, pursuant to our opinion in in Ventura, I assume your honor is referring to the statement that the nationwide presumption does not apply as an error of law. That's actually consistent with what this we didn't. I'm sorry. Not insert us. We didn't. In Malconian, actually, which is the decision on which Singh is based. It may be that we have a problem. Um, Singh wasn't looking at the at the same time frame. So let's back up and maybe you could tell us which set of regulations you think apply to this case. Well, the regulations that changed, um, kind of shifted the burdens in terms of who has to do that are enjoying dramatically, right? Well, they absolutely. But they were not being considered here. Okay. And it should not have been because they're enjoined. Okay. So as long as we're clear on that point, then, um, then can you explain? Well, in saying the nationwide presumption applies, the courts unequivocally said the nationwide presumption of persecution applies. If the fear of future persecution is, quote, at the hands of the government. But, Mr Heiser, that that was the case. In that case, do you agree that the 2013 regs govern this and those specifically say or the applicant has established persecution in the past? How do you get around that? Well, there's the nationwide presumption isn't there, and that that speaks volumes. There's no nationwide presumption in the regulation. What? So just to continue reading, it shall be presumed that internal relocation nationwide. I'm inserting there, but internal relocation in the country of origin would not be reasonable. What's the difference? What do you view is the difference between the presumption the regulation establishes, which you concede applies and the presumption in Whitaker, which dealt with facts not before us, right? The reason there's a distinction there is that the court felt compelled to make a distinction between nationwide persecution and not nationwide persecution. And that comes from Melkonian. There's another, I believe it's actually another Singh case that predated Melkonian. And what's really curious about Melkonian is that actually, and I'm quoting from Melkonian, Melkonian says, Melkonian is not disqualified from asylum eligibility merely because there are areas in the country where he would not face persecution, provided that he demonstrates the unreasonableness of Melkonian. Now, the government here is not arguing that DHS did not bear the burden of proving reasonable relocation. And it's entirely misleading to suggest that the agency didn't apply that here, especially where the board, Administrative Record page four straight up says, DHS bears the burden of proving the reasonableness of internal relocation. Now, with respect to the nationwide reasonableness, that's an enhancement. That doesn't take away the burden. That just means DHS has to do more. And the reason for that is because the government is the persecutor. We don't have government persecution here. That has... Petitioner has never disputed that the government is persecuting him. He's suggested that there were incidents involving the police, but they didn't rise to the level of persecution. But Mr. Heise, that's not the policy that 12018.13B, Romanet 2, established in 2013. This isn't... We're not doing common law in terms of allocating these burdens of proof. These are the department's own regulations that establish that presumption. So it strikes me that he still enjoys the presumption, whatever you call it. And he did. He absolutely did. Okay. And you'd pointed to the BIA opinion. So it misstates the law. Can you just draw us into the exact paragraph where you think the BIA rehabilitates its analysis? Administrative Record page four. Unfortunately, my computer was not cooperating this morning, so I can't cite the exact page. But it's, I believe, at the... At the bottom of four, it says the presumption. The second paragraph says that it bears the burden, but it does not discuss the presumption. Is there a difference between a burden and a presumption? There's a difference between a burden and a presumption. Yes. Here, it's a distinction without a difference, given that... And this is one of Petitioner's other arguments, that DHS shouldn't have been allowed to rely on his evidence to prove that he can safely internally relocate. And there's nothing that says DHS can't do that. Well, setting aside the evidentiary issue, could you go back to the other question? You've described this... The first presumption is uncontested here. There was a finding of past persecution, so you've been great about saying you recognize the burden shifts, the government's not denying that it bears the burden at that stage. At Singh, at 661, we described this other presumption, and you're describing it as an enhanced presumption, whether it's a second presumption or an enhanced presumption. It just makes the burden higher. Right. It says that the BIA... There, we said the BIA failed to apply that nationwide presumption to Singh's asylum claim, even though it correctly afforded him the presumption of a well founded fear of persecution. So I think this is what you're referring to. If you think of it as an enhanced presumption, that's helpful to me. I appreciate that. But I'm still circling back to the problem I've got, which is on ER5, the BIA says squarely, the respondent was not entitled to the rebuttable presumption that the threat of persecution exists nationwide. And I think your response... This is what I referred to when I said, I think this is a black letter error, and you think it is not because... Because of the way the court described when that enhanced presumption applies, because it requires that the past persecution and the fear of future persecution, quote, be at the hands of the government. Okay. So... I read the regulations differently, the regulations that were in place at the time. So I think your position has been... I'm understanding you say you only have one issue before us. So you think the right outcome today would be for us to deny relief on the CAT claim and on the political persecution claim because they're not exhausted? Yes. Okay. There's a raft of issues that are not exhausted that Petitioner is attempting to get before this court. But with respect to the nationwide presumption, even if the board has got the law wrong here, which the government submits it did not, but even if the board got that wrong, remand would be futile here because the evidence is the same. And as all of your owners have noted, that Petitioner's sister living safely within India is hugely significant. Your Honor was on a panel recently that said the government can still rebut this burden, the nationwide burden. It's still rebuttable. Well, in fact, that happened in Singh when we were talking about the family, because this is a unique... That's the problem with this type of claim, right? Is it safe to relocate and then is it reasonable? And part of the reasonable analysis in some of these cases where somebody's advocating something, right, is that in Singh it was remanded because the BIA hadn't factored in whether it would be safe and reasonable to relocate, assuming this person is going to continue his political activity, right? So typically when there's an error and it's a presumption that has to get baked in at the top of a decision tree, we remand pursuant to Ventura rather than doing that for the BIA. That said, often a family member does rebut the presumption. My question to be put a finer point on it is whether you think we should reach that or remand for the BIA to take another run at it. If the board... Excuse me, if this court believes that the board got the law wrong, which it sounds like the court does, then yes, the board should be afforded the first opportunity to apply the nationwide presumption if necessary. But again, remand would be futile. The facts would be the same. So you think it's busy work basically to I've taken you over time. Let me just make sure that we get Judge Bia's questions. Do you take the point that Mr. Job raises that there's no evidence that the Badar persons knew of the existence of the sister? That's not on the record, Your Honor. Again, this is attempting to... I mean, there's nothing showing that they knew about the sister being there one way or the other, right? They knew that the party was obviously well aware of his family. They actually hit his mother at one point. The family. But is there any evidence that the Badar people knew about the family being in other portions of the Punjab? I don't remember specifically in the record, Your Honor. I'm sorry. With respect to his similarly situated family members, however, that that was in the record and discussed multiple times in terms of the sister... Is there anything that tells us whether the sister was politically active alongside her father? Not in the record, Your Honor. Okay. Judge Bia, did you have additional questions? No. Judge Johnson? I just wanted to clarify. We've been talking about the presumption, the BIA statements on the reasonableness prong. The IJ said, with respect to, I think, the safety prong, which also carries a presumption, I'm definitely not satisfied on relocation after the government's... So that strikes me as... Doesn't that strike you as the judge was looking for Mr. Singh to establish safety as well? Again, Petitioner didn't raise this argument, so I haven't specifically focused on that point. Oh, the argument is that they didn't... That the government didn't carry its burden and the judge didn't afford Mr. Singh the presumption to which the regulations entitled him. If the immigration judge erred in that regard, the board cured it. Again, it's the record speaks for itself. The sister living safely within the Punjab, this court has long held that family members remaining safely and unharmed in the country of origin substantially undermines the viability of a future persecution claim. And that's Sharma from... That's the most recent, but also Hakeem. That's at least 20 years ago. And that's safety, but we've also got the presumption on reasonableness. Well, they're essentially the same thing. Okay. Your position is that safety and reasonableness are the same thing? Haven't we been really clear those are two separate inquiries? They are. They're related. Okay, so I didn't mean to jump on you, but I wanna make sure that I understand your position. What did you mean when you answered? It's like talking about as a burden and a presumption, are they the same thing? They're related. They both involve the same question. Can you live somewhere safely? Is it reasonable to expect you to do so? Those are yes. The reason we've been careful to tease those out and not conflate them is that sometimes it might be possible to live somewhere safely, but we have said it's not reasonable to expect a person to do that if that would mean the person has to be muzzled. Right, and that's not what the government is expecting here. But what we have here, and there's additional findings, we focused so far only on the sister, and I'm well  aware of that. Certainly. There was questions about the tracking system for criminals and terrorists and things like that. There's no indication that the Indian government, the police would be tracking Petitioner. There's no indication that the Badal Party has access to that information. But the problem is it's your burden. The problem is it's your burden. Well, that's in the evidence. That is in the record. It's the absence of evidence. What the IJ recognizes is an absence of evidence about whether the Badal Party would have access. That's based on country conditions evidence. That's based on information in the record. Did the government put on any direct evidence in this proceeding? Didn't need to. There's no reason for DHS to do more when Petitioner's own evidence undercuts his own case. Counselor, I'm gonna cut you off there because you're way over time. Yes, I am. I apologize. And you've been patient with our questions. Thank you so much for your helpful responses. Counselor, I'm gonna give you two minutes. The other folks in the courtroom are awaiting their arguments as well. Thank you, Your Honor. With regard to reasonableness, there's no evidence that either the IJ or the board applied the regulatory presumption. Neither even mentioned it. Moreover, on appeal, Mr. Singh argued that it was legal error to not consider whether he would be able to continue to advocate on behalf of this secessionist political party in the place of relocation. Mr. Jobe, if I could address that argument, I wonder if you could help us with the distinction between the general burden of proof which the government must bear and this presumption language that applies to both safety and reasonableness. How do those work in this case or in your client's case not work in your view? I believe that they're the same, Your Honor. The government has the burden of overcoming the presumption. The succeeding, I just want to press you on this a little bit, this is succeeding regulation maintains the allocation of the burden to the government but removes the presumption. So it strikes me that, you know, these aren't our tests. These are the department's tests. That those can't be the same and I'm trying to understand what the difference is. Well, Your Honor, when they alter the nature of the presumption, they alter the nature of the government's burden. In this case, both prongs of the relocation test are crystal clear. When there's a victim of past persecution, the regulations make clear that that individual must be presumed to have a countrywide well-founded fear. And I just want to 1208.13b2ii says that you don't have a well-founded fear if you can reasonably relocate. So when you're presumed to have a well-founded fear, it's presumed that you cannot relocate anywhere within the country. It's a nationwide presumption. I think we did quote that regulation and we're aware of it and we appreciate your argument very, very much. Is there anything you want to wrap up? Anything else you wanted to say? Not unless you have further questions, Your Honor. I don't believe we do. Thank you so much for your argument. Thank you both. We'll go on to the next case.
judges: BEA, CHRISTEN, JOHNSTONE